IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 06-00143 JMS (01) |
| Plaintiff, | |
| vs. | ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 154 |
| HENRY KAPONONUIAHOPILI LII, | |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 154

## I.  INTRODUCTION

In 2006, Defendant Henry Kapononuiahopili Lii ("Defendant") pled guilty to three methamphetamine-related offenses that involved a total of 104.6 grams of actual methamphetamine.  Based on two prior state court convictions for minor drug offenses, Defendant was sentenced to a mandatory minimum sentence of life in prison.[1]

Defendant now moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from United States Penitentiary Atwater ("USP Atwater").

---

[1]  Specifically, Defendant was sentenced to life as to Counts 1 and 2 of the Indictment and 120 months as to Count 3 of the Indictment, with all terms to run concurrently.  ECF No. 78 at PageID # 215.

ECF No. 154.  He argues that compassionate release is warranted because (1) his life sentence is grossly disproportionate relative to the fifteen-year mandatory minimum that now applies in light of the First Step Act's sentencing reforms; and (2) pre-existing medical conditions place him at increased risk of serious illness or death should he contract COVID-19.  *Id.*  The court agrees that the enormous sentencing disparity justifies compassionate release and thus ORDERS that Defendant's sentence be reduced to time served with supervised release to follow.

## II. <u>BACKGROUND</u>

On August 24, 2006, Defendant pled guilty to a three-count indictment charging him with: (1) conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(l), and 841(b)(l)(A); (2) distributing 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(A); and (3) possessing with intent to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(l) and 841(b)(l)(B).  ECF No. 39; ECF No. 78 at PageID # 214.  These charges were based on the distribution of 77.4 grams of actual methamphetamine and the possession of 27.2 grams of actual methamphetamine with the intent to distribute.  *See* PSR ¶¶ 12-13, ECF No. 73 at PageID # 1048.  Thus, for the purpose of sentencing, Defendant was deemed

responsible for 104.6 grams of actual methamphetamine. *Id*. at ¶ 26, ECF No. 73 at PageID # 1050.

Under the United States Sentencing Guidelines ("Guidelines"), and based on this drug quantity, Defendant received a base level offense 32 and a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 29. *Id.* at PageID # 1051. With a criminal history category VI at the time of sentencing, *id.* at PageID # 1052-57, Defendant's advisory Guideline range—before taking into account the mandatory minimum—was 151 to 188 months. *Id.* at ¶ 73,[2] ECF No. 73 at PageID # 1060; *see also* Guideline Sentencing Table (2007).[3] But because the Government filed a special information pursuant to 21 U.S.C. § 851, Defendant received a mandatory life sentence. *See* ECF No. 33; ECF No. 78 at PageID # 215.

In 2006, when Defendant was sentenced, the filing of a § 851 special information triggered enhanced mandatory minimum sentences under 21 U.S.C. § 841 based on prior "felony drug offenses," defined as any drug offense "that is

---

[2] The PSR at paragraph 73 mistakenly lists the range as 157 to 188 months. The correct range is 151 to 188 months. Guideline Sentencing Table (2007).

[3] When Defendant was sentenced, offenses involving at least 50 grams but less than 150 grams of actual methamphetamine resulted in a base offense level 32 under Guideline § 2D1.1(c)(4). Since that time, the base offense level has been reduced; if sentenced today, the base offense level would be 30 under Guideline § 2D1.1(c)(5). With a total offense level 27 (base offense level 30 minus 3 for acceptance of responsibility) and criminal history category VI, Defendant's current Guideline range would be 130-162 months.

punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country." 21 U.S.C. § 802(44). Based on Defendant's conviction under 21 U.S.C. § 841(b)(1)(A), one prior conviction resulted in a mandatory minimum of 20 years, and two prior convictions resulted in a mandatory minimum of life. *See* PSR ¶¶ 71, ECF No. 73 at PageID # 1060.

In this case, the Government's special information relied on two prior convictions, both stemming from 1988 arrests, when Defendant was 22 years old. *Id.* at ¶¶ 40-41, ECF No. 73 at Page ID ## 1052-54. First, Defendant was convicted in Hawaii state court in 1988 for promoting a dangerous drug in the second degree after he sold 0.27 grams of cocaine to an undercover police officer for $50. *Id.* at ¶ 40, ECF No. 73 at Page ID # 1052. This offense is a class B felony, punishable by a maximum term of imprisonment of 10 years. *See* Hawaii Revised Statues ("HRS") § 712-1242; HRS § 706-660(2)(a). Second, Defendant was convicted in Hawaii state court in 1989 for promoting dangerous drugs in the third degree—a class C felony punishable by a maximum term of imprisonment of five years, HRS § 712-1243; HRS § 706-660(2)(b)[4]—after a probation search of his apartment yielded 3.09 grams of cocaine, 0.06 grams of marijuana, and two

---

[4] Defendant was also convicted of promoting a detrimental drug in the third degree in violation of HRS § 712-1249 and unlawful use of drug paraphernalia in violation of HRS § 329-43.5(a). ECF No. 33-3 at PageID # 89. But because neither of these offenses qualified as "felony drug offenses," they were not charged in the special information. *See* ECF No. 33 at PageID # 94.

glass pipes.  PSR ¶ 41, ECF No. 73 at Page ID # 1053-54.  Because both of these convictions qualified as "felony drug offenses," Defendant's mandatory minimum sentence was increased from ten years to life.  *See id.* at ¶¶ 71-72, ECF No. 73 at PageID # 1060.

Defendant has now spent 15 years in Bureau of Prisons ("BOP") custody.  During that time, he has had a mixed record.  In his favor, he has taken multiple educational classes, worked continuously, and has reportedly completed a non-residential drug treatment program.  ECF No. 154-3; ECF No. 154-1 at PageID # 915.  He has worked as a unit orderly since 2016, and his most recent program review states that he "[m]aintains the high standards of the Unit, assists in tasks that he is not assigned, and maintains Good work evaluations."  ECF No. 154-3 at PageID # 921.

Much less favorable, Defendant has received four disciplinary actions over the last fifteen years.  ECF No. 160-1 at PageID ## 985-86.  Three of these offenses—receiving money from another inmate's family, possessing intoxicants (which appear to be alcohol), and participating in a group demonstration—are of lesser concern than the fourth—possession of "card stock bindles laced [with] heroin" in January 2018.  *Id.*; *see generally* ECF No. 175-1.

On March 23, 2020, Defendant applied to USP Atwater's Warden for compassionate release based on the First Step Act's sentencing reforms.  ECF No.

149-1 at PageID # 863.  USP Atwater's Warden denied Defendant's request on

April 23, 2020, *id.* at PageID # 864, and Defendant appealed (sought

reconsideration) on June 8, 2020.  ECF No. 149-2 at PageID # 865.  That appeal,

too, was denied by the Warden.  *Id.* at PageID # 866.  On January 6, 2021,

Defendant, represented by counsel, moved for compassionate release before this

court based both on the First Step Act change in law and health concerns related to

COVID-19.  ECF No. 154.

The Government filed its Opposition on January 21, 2021.  ECF No.

160.  Among other issues, the Government argued that Defendant failed to exhaust

his administrative remedies because he had never sought compassionate release

from BOP based on COVID-19 concerns.  *Id.* at PageID ## 969-72.  On January

25, 2021, Defendant submitted a request for compassionate release on COVID-19

grounds to the USP Atwater Warden, which was denied on February 10, 2021.

ECF No. 173 at PageID # 1086.  The parties now agree that Defendant has fully

exhausted his administrative remedies.  *Id.* at PageID # 1085.

Meanwhile, Defendant filed his Reply to the Government's

Opposition on January 27, 2021.  ECF No. 163.  After applying for leave to do so,

the Government filed a Sur-Reply on February 18, and Defendant filed a Response

to the Sur-Reply on February 23, 2021.  ECF Nos. 167 & 171.  An in-court hearing

was held on March 8, 2021.  ECF No. 174.  At the court's request, the Government

filed a Second Supplemental Brief on March 15, 2021.  ECF No. 175.

## III.  <u>DISCUSSION</u>

### A.    **Legal Framework**

Both the compassionate release mechanism Defendant invokes and his

argument as to why compassionate release is warranted stem from reforms

implemented through the First Step Act of 2018.  The court sets forth the pertinent

provisions of the Act before turning to the substance of Defendant's arguments.

### 1.    *Compassionate Release*

The First Step Act substantially increased the ability of federally

incarcerated persons to seek reduction of their sentence under the "compassionate

release statute," 18 U.S.C. § 3582(c)(1)(A).  *United States v. McCoy*, 981 F.3d

271, 275 (4th Cir. 2020).  Before passage of the First Step Act, courts could only

consider motions for compassionate release upon a motion by the BOP.  *Id.* at 276.

But the BOP "used that power so 'sparingly'" that a negligible number of

incarcerated persons were released each year.  *Id.*  Moreover, the BOP lacked

standards and timelines for review of compassionate release motions, "causing

delays so substantial that inmates sometimes died awaiting final BOP decisions."

*Id.* (citing *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)).

Through the First Step Act, Congress amended § 3582(c)(1)(A) to "remove the Bureau of Prisons from its former role as gatekeeper over compassionate release petitions." *Id.* (internal quotation and citation omitted). As amended, § 3582(c)(1)(A) now allows defendants to file motions for compassionate release on their own behalf, so long as they first "exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Once administrative remedies have been exhausted, a court may grant a defendant's motion for compassionate release if "after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) after consideration of the applicable section 3553(a) factors, the court determines that Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with any applicable Sentencing Commission's policy statements.

Although § 3582(c)(1)(A)(i) does not define "extraordinary and compelling reasons," the Sentencing Commission has addressed the meaning of this phrase in Guideline § 1B1.13.  Specifically, the commentary to the Guideline defines "extraordinary and compelling reasons" as "terminal illness, an elderly inmate's rapidly declining health, and care for dependent family members." *United States v. Ledezma-Rodriguez*, 472 F. Supp. 3d 498, 502-03 (S.D. Iowa 2020) (citing Guideline § 1B1.13 cmt. n.1).  The commentary also contains a catch-all provision that allows the BOP Director to determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the three other, specifically enumerated reasons.  Guideline § 1B1.13 cmt. n.1.

Because the Guideline policy statement was issued before the First Step Act provided defendants the ability to file motions for compassionate release, and because the Sentencing Commission has been unable to amend the Guidelines post-First Step Act due to a lack of a quorum, Guideline § 1B1.13 does not address defendant-filed motions for compassionate release.  Nevertheless, the Government argues that Guideline § 1B1.13 is an "applicable policy statement" binding on the court as written.  Thus, the Government asserts, courts lack the discretion that the Guideline grants to the BOP Director in its "catch-all" provision to find extraordinary and compelling reasons other than terminal illness, age, or care for

9

dependent family members.  ECF No. 175 at Page ID ## 1089-90.  The court disagrees.

Contrary to the Government's position, a growing majority of courts have determined that the Guidelines lack any policy statement "applicable" to a defendant-filed motion for compassionate release.  *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) (stating that "U.S.S.G. § 1B1.13 is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (stating that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of  § 3582(c)(1)(A) does not curtail a district judge's discretion"); *McCoy*, 981 F.3d at 281 (explaining that because "the First Step Act has removed the BOP, quite deliberately, from its gatekeeping role, the BOP's authority to determine the existence of 'other reasons' under Application Note 1(D) is irreconcilable with the amended § 3582(c)(1)(A)" and concluding that when a defendant "exercises his new right to move for compassionate release on his own behalf"  "§ 1B1.13 is not an 'applicable' policy statement at all"); *see also Brooker*, 976 F.3d at 237 ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."); *but see United States v. Arceneaux*, 830 F. App'x 859 (9th Cir. Dec. 8, 2020) (mem.) (affirming district

court's denial of compassionate release, apparently based in part on consideration of § 1B1.13(2)).

Previously, this court agreed that it could consider the "full slate" of extraordinary and compelling reasons, although for slightly different reasons. That is, the court determined that the Guideline commentary's fourth, catch-all provision empowering the BOP Director to determine whether other extraordinary and compelling reasons exist applies equally to the court when ruling on motions for compassionate release. *See United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020). Regardless of the ultimate reasoning applied, the court determines that it is not bound by Guideline § 1B1.13's restrictions, but instead may make its own independent determination whether extraordinary and compelling reasons warrant a sentence reduction.

### 2. *Mandatory Minimums*

The First Step Act also made "[m]onumental . . . changes to sentencing calculations." *Brooker*, 976 F.3d at 230. As relevant here, the First Step Act limited mandatory minimum enhancements based on prior drug convictions along two axes—the length of the mandatory minimums imposed and the range of offenses that trigger mandatory minimums in the first instance. For

convictions under 21 U.S.C. § 841(b)(1)(A),[5] the enhanced mandatory minimum based on one prior conviction was reduced from 20 years to 15 years, and the enhanced mandatory minimum based on two or more prior convictions was reduced from life to 25 years.  In addition, the Act significantly limited the type and seriousness of prior drug convictions that trigger mandatory minimums.  Prior to the First Step Act, enhanced mandatory minimums could be triggered if a defendant had been convicted of *any* drug offense under federal, state, or foreign law punishable by more than one year.  21 U.S.C. § 802(44).  After the First Step Act, however, a defendant must have previously been convicted of one or more "serious drug felon[ies]," as that term is defined in 21 U.S.C. § 802(57) and 18 U.S.C. § 924(e)(2), in order to be subjected to an enhanced mandatory minimum sentence.  21 U.S.C. § 841(b)(1)(A).

Serious drug felonies are limited to (1) violations of specific federal statutes;[6] and (2) violations of state law involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance.  21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2).  In both cases, to constitute a "serious drug felony" the offense must be punishable by "a maximum term of imprisonment

---

[5]  Because Defendant was convicted under 21 U.S.C. § 841(b)(1)(A), the court references the pre- and post-First Step Act law relating to that statute only.

[6]  The Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or Maritime Drug Law Enforcement (chapter 705 of title 46).  *See* 18 U.S.C. § 924(e)(2).

of ten years or more [as] prescribed by law." *See* 18 U.S.C. § 924(e)(2).  In

addition, the defendant must have served a term of imprisonment of more than one

year and must have been released "from any term of imprisonment . . . within 15

years of the commencement of the instant offense." *See* 21 U.S.C. § 802(57); *see*

*also United States v. Brown*, 2020 WL 7401617, at *5 (E.D. Wis. Dec. 17, 2020)

(summarizing First Step Act changes).

**B.      Analysis**

The court may grant Defendant's Motion for Compassionate Release

if (1) Defendant has exhausted his administrative remedies; (2) extraordinary and

compelling circumstances warrant release; and (3) release is consistent with any

applicable Section 3355(a) factors.  The parties do not dispute that Defendant has

fully exhausted his administrative remedies.  ECF No. 173 at PageID # 1085.  The

court thus considers only whether Defendant has demonstrated extraordinary and

compelling reasons and whether his release would be consistent with applicable

Section 3355(a) factors.

**1.      *Extraordinary and Compelling Reasons***

Defendant bears the burden to establish extraordinary and compelling

reasons that justify compassionate release.  *See, e.g.*, *United States v. Bogema*,

2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted).  Defendant

argues that compassionate release is appropriate because (1) his life sentence is

grossly disproportionate to what Congress now considers fair for his conviction and prior criminal history in light of First Step Act reforms; and (2) his age, obesity, and possible hypertension place him at a high risk of severe complications, hospitalization, or death should he contract COVID-19 while incarcerated.  ECF No. 154-1 at PageID ## 895-904.

Turning to the first argument, if sentenced today, Defendant would not be sentenced to mandatory life in prison.  In 2006, Defendant was given a mandatory minimum sentence of life in prison based on two prior convictions for relatively minor drug crimes that were approximately 18 years old at the time. Defendant was first convicted in 1988 under Hawaii state law for promoting a dangerous drug in the second degree for selling 0.27 grams of cocaine to an undercover police officer for $50.  PSR ¶ 40, ECF No. 73 at PageID # 1052.  As Defendant and the United States agree, this offense qualifies as a "serious drug felony" under the First Step Act.  *See* HRS § 712-1242; HRS § 706-660(2)(a); *see also* ECF No. 154-1 at PageID # 902.  Defendant was next convicted in 1989 on three counts—promoting a dangerous drug in the third degree, promoting a detrimental drug in the third degree, and unlawful use of drug paraphernalia.  PSR ¶ 41, ECF No. 73 at Page ID # 1053.  These convictions were based on possession of 3.09 grams of cocaine, 0.06 grams of marijuana, and two glass pipes.  *Id.* at PageID # 1054.  None of these offenses qualifies as a "serious drug felony"; they

14

do not involve manufacturing, distributing, or intending to manufacture or distribute a controlled substance. Moreover, promoting a dangerous drug in the third degree is punishable by a term of imprisonment of not more than five years, and the other two offenses are only punishable by a fine. *See* HRS § 712-1243; HRS § 712-1249; HRS § 329-43.5; HRS § 706-660.

Thus, had Defendant been sentenced today, both "axes" of First Step Act reforms would have lowered his sentence. Only one of his prior convictions, not two, would have triggered an enhanced mandatory minimum. And the mandatory minimum based on one prior offense is now 15 rather than 20 years. 21 U.S.C. § 841(b)(l)(A). Because Defendant's guideline range was 151 to 188 months,[7] if sentenced today, this court would almost certainly not sentence Defendant in excess of a 15-year mandatory minimum given the quantity of drugs involved in the instant offense[8] and the small amount of drugs involved in his 1988 conviction. Stated differently, considering all the applicable § 3553(a) factors, Defendant would not be sentenced in excess of the 15-year mandatory sentence. And as of March 2021, Defendant has served a full 15-year sentence.

---

[7] Again, if sentenced today, Defendant's Guideline range would be 130 to 162 months.

[8] Given the court's familiarity with the type of methamphetamine offenses prosecuted in the District of Hawaii, and given that Defendant's convictions involved just over 100 grams of actual methamphetamine, the court would classify Defendant (as of 2006) as a low to mid-level distributor of methamphetamine.

District courts are split on the question of whether drastic sentencing disparities created by the First Step Act's reforms can constitute extraordinary and compelling reasons for the purpose of compassionate release.[9]  Several district courts have held that sentencing disparities cannot provide any basis for compassionate release because "the [sentencing reform] amendment is expressly not retroactive."  *United States v. Andrews*, 480 F. Supp. 3d 669, 680 (E.D. Pa. 2020).  Thus, "[g]ranting a motion for compassionate release on the basis of the amendment to [§ 841] would supplant the retroactivity determination of courts—that the amendment should be applied retroactively on a case-by-case basis—for the retroactivity determination of Congress—that the amendment should not be applied retroactively."  *Id.*  This outcome is impermissible, these courts hold, because "[w]hen Congress speaks on the retroactivity of the statute, its judgment is final."  *Id.*; *see also, e.g.*, *United States v. Jackson*, 2020 WL 2812764, at *5 (D. Kan. May 29, 2020), *reconsidered on other grounds*, 2020 WL 4284312 (D. Kan. July 27, 2020) (holding courts cannot consider sentencing disparities on a motion for compassionate release because doing so would "effectively [provide the First Step Act] retroactive effect on a case-by-case basis."); *United States v. Goetz*, 2020

---

[9]  Courts have analyzed this question with respect to First Step Act amendments to enhanced mandatory minimums under both 21 U.S.C. § 851 and 18 U.S.C. § 924(c).  The analysis is the same as to each amendment and the court does not distinguish between the two in its discussion of the case law.  *See United States v. Williams*, 2020 WL 5834673, at *7 (W.D. Va. Sept. 30, 2020) (explaining that the "same [analysis] applies" to First Step Act amendments to § 851 and § 924(c) when considering a motion for compassionate release).

WL 5423920, at *4 (S.D. Ind. Sept. 10, 2020) (denying compassionate release on the basis that defendants "may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s 'extraordinary and compelling' provision as an end-around to achieve a result that Congress did not intend."); *United States v. Pitts*, 2020 WL 1676365, at *7 (W.D. Va. Apr. 6, 2020) (holding that granting compassionate release on the basis of a First Step Act sentencing disparity would constitute an "end-around solution that ignores the statutory limitations Congress imposed on the [First Step Act] amendment").[10]

But the only circuit court to consider the issue, as well as a growing majority of district courts, disagree.  While accepting the general premise that the First Step Act's expressly non-retroactive change in the law—standing alone— cannot justify compassionate release, these courts conclude that, on an individualized basis, "the severity of a [pre-First Step Act] sentence, combined with the *enormous disparity* between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)."  *McCoy*, 981 F.3d at 285 (emphasis added); *see also,*

---

[10]  In its Opposition Brief, the Government argues that "whether the defendant's sentence would have been lower under the First Step Act . . .  is irrelevant to this motion: Congress did not make these provisions of the First Step Act that the defendant references retroactive."  ECF No. 160 at PageID # 976.  In its Second Supplemental Brief, the Government clarified its position: "If the defendant can establish a physical or mental condition that qualifies as an extraordinary and compelling reason for release, the Court may consider other factors . . . including a non-retroactive change in law."  ECF No. 175 at Page ID # 1091.

*e.g.*, *United States v. Haynes*, 2021 WL 406595, at *5 (C.D. Ill. Feb. 5, 2021)

("[C]ourts may consider individual defendants' circumstances and weigh whether a

particular sentencing disparity is truly 'extraordinary and compelling' on a case-

by-case basis."); *Brown*, 2020 WL 7401617, at *5 ("While Congress did not make

this portion of the First Step Act retroactive across the board, courts may consider

such legislative changes in 'conducting their individualized reviews of motions for

compassionate release under § 3582(c)(1)(A)(i).'") (collecting cases) (quoting

*McCoy*, 981 F.3d at 286); *Ledezma-Rodriguez*, 472 F. Supp. 3d at 504 ("Several

courts, including this one, have concluded that drastic sentencing disparities

created by sentencing law reforms can be an extraordinary and compelling reason

supporting release.") (collecting cases); *see also Williams*, 2020 WL 5834673, at

*7; *United States v. Cisneros*, 2020 WL 3065103, at *3 (D. Haw. June 9, 2020).

  The court agrees with this interpretation.  As the Fourth Circuit set

forth in *McCoy*:

> The fact that Congress chose not to make [the sentencing
> reforms of] the First Step Act categorically retroactive
> does not mean that courts may not consider that
> legislative change in conducting their *individualized
> reviews* of motions for compassionate release under
> § 3582(c)(1)(A)(i).  As multiple district courts have
> explained, there is a significant difference between
> automatic vacatur and resentencing of an entire class of
> sentences – with its 'avalanche of applications and
> inevitable resentencings' . . .– and allowing for the
> provision of individual relief in the most grievous
> cases. . . . Indeed, the very purpose of § 3582(c)(1)(A) is

18

> to provide a 'safety valve' that allows for sentence
> reductions when there is *not* a specific statute that already
> affords relief but 'extraordinary and compelling reasons'
> nevertheless justify a reduction . . . . [W]e see nothing
> inconsistent about Congress's paired First Step Act
> judgments: that 'not *all* defendants convicted under [the
> prior sentencing scheme] should receive new sentences,'
> but that the courts should be empowered to 'relieve *some*
> defendants of those sentences on a case-by-case basis.'

981 F.3d at 286-87 ("individualized reviews" emphasis added) (quoting *United*

*States v. Haynes*, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020); *United States v.*

*Jones*, 482 F. Supp. 3d 969 (N.D. Cal. 2020)).  Moreover:

> In declining to give [the First Step Act's sentencing
> reforms] retroactive effect, Congress did not express a
> broad intent to foreclose other avenues of relief to the
> class of defendants sentenced under the pre-First Step
> Act [§ 841].  Nor did it instruct courts to refrain from
> exercising their authority under § 3582(C)(1)(A) if, in so
> doing, they might coincidentally produce a result
> consistent with the retroactive application of [the First
> Step Act's sentencing reforms].  [Rather,] when Congress
> passed the original compassionate release statute in 1984,
> it provided that courts may consider whether a defendant
> is serving 'an unusually long sentence' when ruling on a
> motion for a sentence reduction.

*United States v. Ezell*, 2021 WL 510293, at *5 (E.D. Pa. 2021) (citing *Brooker*,

976 F.3d at 238 (quoting S. Rep. No. 98-225, at 55-56 (1984)) (identifying

"unusual cases" in which a sentence reduction is justified, including, "cases in

which other extraordinary and compelling circumstances justify a reduction of an

unusually long sentence.")).  Thus, "it is not unreasonable for Congress to

conclude that not all defendants convicted [pre-First Step Act] should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis through compassionate release." *Id.* (internal quotation and citation omitted).

Put another way, when undertaking an "individualized assessment" as to a defendant's circumstances, courts may properly consider both the "sheer and unusual length" of a sentence given under the former sentencing regime and the "gross disparity" between that sentence and the sentence "Congress now believes to be an appropriate penalty for the defendants' conduct." *McCoy*, 981 F.3d at 285; *see also United States v. Urkevich*, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in [defendant's] sentence [may be] warranted by . . . the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."); *Williams*, 2020 WL 5834673, at *8 ("Both the striking disparity between the short duration of [Defendant's] prior state court sentences and his federal mandatory life sentence and subsequent recognition by Congress that a mandatory life sentence is not warranted under these circumstances establish extraordinary and compelling reasons to vacate [his] life sentence."). Along with considering the sentencing disparity in an individual defendant's case, courts undertake "full consideration of the defendant's individual circumstances," including the length of the sentence the defendant had served at

20

the time of their motion, as well as their institutional records and any steps taken toward rehabilitation.  *McCoy*, 981 F.3d at 286; *see also Ezell*, 2021 WL 510293, at *4 ("Having concluded that [defendant's] sentence was indeed harsh, the Court thus examines whether, in combination with other factors related to [defendant's] rehabilitation, the nature of [defendant's] sentence constitutes an 'extraordinary and compelling' reason meriting a sentence reduction under § 3582(c)(1)(A)(i).")

Here, Defendant was convicted of distributing and possessing with intent to distribute approximately 100 grams of methamphetamine.  At most, this offense suggests that Defendant was a low- to mid-level distributor of methamphetamine.  For this conviction alone, Defendant would have faced a mandatory minimum of 10 years imprisonment and a Guideline range of 157 to 188 months (130 to 162 months if sentenced today).  Instead, he was sentenced to life in prison under the pre-First Step Act sentencing scheme based on two prior state court convictions for relatively minor drug offenses (selling 0.27 grams of cocaine for $50 and possessing 3.09 grams of cocaine, 0.06 grams of marijuana, and two glass pipes).

The disparity between a 15-year sentence and a lifetime in prison is clear.  But it is particularly striking when considering that Defendant was not a large-scale methamphetamine trafficker and his prior convictions were of a minor nature (that is, selling a very small quantity of methamphetamine in one, and the

simple possession of a user quantity in another).  Stated differently, the sentence

enhancement triggered by Defendant's prior convictions for minor drug crimes

was "enormous," creating an equally "enormous disparity" between his sentence

and the sentence "Congress now believes to be an appropriate penalty for [his]

conduct." *McCoy*, 981 F.3d at 285.  This gaping disparity provides a "strong

indication that his circumstances are 'extraordinary and compelling.'" *Ezell*, 2021

WL 510293, at *6; *see also, e.g.*, *United States v. Day*, 474 F. Supp. 3d 790, 804

(E.D. Va. 2020) (granting relief where mandatory sentence would now be 15 years

rather than life); *Ledezma-Rodriguez*, 472 F. Supp. 3d at 504-05 (granting relief

where mandatory sentence would be 10 years rather than life).

Defendant's case stands in contrast to a situation where a defendant's

offense conduct was more serious—perhaps warranting a Guideline range

approaching a life sentence; or a situation in which the First Step Act sentencing

disparity was much lower—perhaps a change from 20 to 15 years.  Here, the

severity of a life sentence, the enormous disparity between the sentence Defendant

received and the one he would receive today, and the fact that Defendant was a low

to mid-level distributor of methamphetamine makes this a "grievous cases" for

which "individual relief" is appropriate under the compassionate release statute,

§ 3582(c)(1)(A).  *McCoy*, 981 F.3d at 285.  Of course, "holding a severe

sentencing disparity *can* constitute an 'extraordinary and compelling' reason is not

the same as holding it *will*." *Haynes*, 2021 WL 406595, at *6-7. Each case must be based on the individual circumstances of a defendant, and not all sentencing disparities will meet the high bar of extraordinary and compelling reasons that warrant a sentence reduction. *See id.* ("[R]elief in this context is available only in the most extreme of cases; there will be times when disparities that could be described as 'unfair' will nevertheless fail to rise to the level of 'extraordinary and compelling.'").

Defendant's other "individualized circumstances" further support a finding that compassionate release is appropriate. First, Defendant has already served 15 years in prison—the full term of the mandatory minimum applicable today. This suggests that Defendant has already served a fair sentence and that the goals of incarceration have been achieved. *See, e.g.*, *Ledezma-Rodrigues*, 472 F. Supp. 3d at 504-05 (noting that the defendant was only serving a life sentence because the government "chose to flag two prior drug convictions under § 851," that "most people guilty of similar crimes do not face life in prison," and that the 20 years defendant had served to date was more than an adequate punishment); *United States v. McPherson*, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020) (granting a sentence reduction to a defendant "sentenced to over 32 years in prison," which is "15 years beyond what is now deemed a fair penalty by our law"); *Haynes*, 2021 WL 406595, at *6-7 (reducing defendant's 105-year sentence

23

based on "massive disparity" created by First Step Act amendments, in part

because "the national average sentence for murder . . . [is] approximately 21 years"

and "[w]hile Defendant's multiple armed robbery crimes were undeniably serious,

the Court doubts any reasonable person would suggest they are deserving of a

sentence 5 times the length of the average sentence for murder.  Defendant's case

is one illustrating how severe sentencing mandates can create outcomes wholly

divorced from our notions of justice").

Moreover, Defendant was relatively young when convicted of his

underlying drug offenses—in his early 20's—and he has no convictions for crimes

of violence.  *See, e.g.*, *McCoy*, 981 F.3d at 286 (finding the defendants' relative

youth—from 19 to 24 years old—at the time of their offenses militated in favor of

granting compassionate release); *Williams*, 2020 WL 5834673, at *9 (same);

*United States v. Redd*, 444 F. Supp. 3d 717, 728 (E.D. Va. 2020) (finding that

defendant's "relatively minor, non-violent" criminal history supported

compassionate release); *United States v. Blanco*, 2020 WL 7350414, at *6 (N.D.

Cal. Dec. 14, 2020) (finding compassionate release was warranted despite

defendant's serious but non-violent criminal history based on his disproportionate

sentence and evidence of rehabilitation while incarcerated).

The court recognizes Defendant's record while in BOP custody is

mixed.  While incarcerated, he has taken multiple educational classes, worked

24

continually, and completed a non-residential drug treatment, suggesting a commitment to rehabilitation. ECF No. 154-3; ECF No. 154-1 at PageID # 915; *see, e.g.*, *United States v. Barron*, 2020 WL 4196194, at *2 (C.D. Cal. July 9, 2020) (holding that a defendant's evident rehabilitation supported granting compassionate release where defendant had only three non-violent disciplinary actions in 19 years of custody and had taken multiple classes); *Ezell*, 2021 WL 510293, at *6 (concluding that by "continually work[ing] to better himself while in prison" "rather than dwelling on his life sentence," the defendant demonstrated a commitment to rehabilitation that weighed heavily in favor of granting compassionate release).

But Defendant has also had four disciplinary actions while in BOP custody. Of greatest concern, Defendant was sanctioned for the possession of a heroin in 2018. *See generally* ECF No. 175-1. Although the court certainly understands the seriousness of drug offenses in a prison setting, Defendant's conduct while incarcerated does not counterbalance the "extraordinary and compelling" nature of Defendant's grossly disproportionate sentence. *See Haynes*, 2021 WL 406595, at *7 (finding that although "Defendant's crimes were inarguably serious and deserving of harsh punishment, and his record in prison is less than exemplary" compassionate release was still warranted based on his grossly disproportionate life sentence); *Ledezma-Rodriguez*, 472 F. Supp. 3d at 506

("[R]ightly or wrongly, this country's criminal justice system is premised on the idea that a person can—and hopefully will—change after several years locked in prison."); *see also Musa v. United States*, 2020 WL 6873506, at *7 (S.D.N.Y. Nov. 23, 2020) (finding that sentencing disparity alone could not justify compassionate release where defendant had "not demonstrated a prolonged track record of rehabilitation" and had "more than 60 disciplinary infractions while in BOP custody, including one for 'threatening bodily harm.'").  Further, while on supervised release the Defendant will undergo frequent drug testing and treatment. And should Defendant use any illegal narcotics, his supervision can be revoked.

Finally, Defendant is 55 years old, is obese to morbidly obese (BMI of 38 to 40), and possibly has hypertension.  ECF No. 158 at PageID # 928, 934; PSR ¶ 58, ECF No. 73 at PageID # 1058; ECF No. 154-1 at PageID ## 895-96.  These conditions place him at an increased risk should he contract COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 23, 2021).  On the other hand, the BOP has begun the process to vaccinate staff and inmates at USP Atwater.[11]  *See* https://www.bop.gov/coronavirus/index.jsp (last visited March 23, 2021).

---

[11]  The court is aware that Defendant was offered and initially refused to take the COVID-19 vaccine.  ECF No. 167 at PageID # 1025.  After speaking with his lawyer, Defendant has indicated he will take it if offered again.  ECF No. 171-1 at PageID # 1042.  The court leaves for another day the implication of a refusal to be vaccinated on a request for compassionate release.

Defendant's COVID risk factors, standing alone, would not justify compassionate release.  By contrast, his grossly disproportionate sentence is enough to independently justify compassionate release.  Nevertheless, that Defendant's request comes during an unprecedented global pandemic and that Defendant has elevated vulnerabilities to COVID-19 only adds weight to the court's conclusion that compassionate release is justified because of the enormous disparity between the life sentence Defendant received and the 15-year sentence he would have received today.

In short, Defendant has demonstrated that extraordinary and compelling reasons justify his early release from incarceration.

### 2.   *Section 3355(a) Factors*

As relevant to this case, the § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[12] and (2) the need for the sentence imposed: (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other

---

[12]  As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

correctional treatment in the most effective manner.  18 U.S.C. §§ 3553(a)(1)-(2).

And under the parsimony clause, the court must "impose a sentence sufficient, but

not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

These factors have been discussed thoroughly above in considering

whether Defendant's sentencing disparity warrants compassionate release.  The

court will not rehash the details here.  But, in short, Defendant was convicted of

possessing and distributing approximately 100 grams of actual methamphetamine

and has a criminal history of only minor offenses, none of them violent.  He has

had infractions—one very serious—while in custody.  But he has also taken steps

toward rehabilitation despite his life sentence, including taking classes,

maintaining continued employment, and seeking drug treatment.  In addition,

Defendant has put forth an appropriate release plan—to live with his sister, who

will help him to secure employment.  ECF No. 154-1 at PageID # 917.  Finally, for

all the reasons discussed above, the 15 years Defendant has served to date is

sufficient to achieve the goals of sentencing under § 3553(a)(2).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Sentence

Reduction under 18 U.S.C. § 3582(c)(1)(A) (Compassionate Release), ECF No.

154, is GRANTED.  It is further ordered that:

1. Defendant's sentence of incarceration is reduced to time served plus 14 days.  To minimize COVID-19 risks, the court requests that the BOP place Defendant in quarantine during his final 14 days in custody.

2. Upon release from custody, Defendant shall commence serving his ten-year term of supervised release as previously imposed; and shall abide by all mandatory, standard, and special conditions as approved and ordered by the Court on March 23, 2021, ECF No. 176.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 23, 2021



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Lii*, Cr. No. 06-00143 JMS (01), Order Granting Defendant's Motion for Compassionate Release, ECF No. 154